Wallach, Circuit Judge, dissenting.
The Supreme Court has made clear that "[a] court reviewing an agency's adjudicative action should accept the agency's factual findings if those findings are supported by substantial evidence.... The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence." Arkansas v. Oklahoma , 503 U.S. 91, 113, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992) (citation omitted); see, e.g. , Consolo v. Fed. Mar. Comm'n , 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966) (explaining that, under substantial evidence review, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence" (citations omitted) ). We have applied this principle when reviewing final written decisions of the U.S. Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB"). See, e.g. , Elbit Sys. of Am., LLC v. Thales Visionix, Inc. , 881 F.3d 1354, 1356 (Fed. Cir. 2018) (similar). By reversing the PTAB's findings as to claim 1,[1] the majority contravenes this precedent and improperly substitutes its own factual findings for those of the PTAB.[2] Therefore, I respectfully dissent.
*1350 DISCUSSION
I. Substantial Evidence Supports the PTAB's Determination that Carney Does Not Anticipate the Challenged Claims
"[A] prior art reference will anticipate if it discloses each and every element of the claimed invention." Blue Calypso, LLC v. Groupon, Inc. , 815 F.3d 1331, 1341 (Fed. Cir. 2016) (internal quotation marks, brackets, ellipsis, and citation omitted). "Anticipation is a question of fact that we review for substantial evidence." Id. (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB , 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (citations omitted).
Illustrative claim 1 recites, inter alia, "changing from a first of said physical [radiofrequency ('RF') ] channels upon which said mobile subscribers communicate with said base[ ]station to a second of said physical RF channels, while maintaining a same logical channel." '408 patent col. 13 ll. 24-27 (the "frequency hopping" limitation). The PTAB found that Appellants Ericsson Inc. and Telefonaktiebolaget LM Ericsson (together, "Ericsson") failed to show by a preponderance of the evidence that Carney disclosed the "frequency hopping" limitation, such that Carney did not anticipate the Challenged Claims. J.A. 19. The majority holds that the PTAB's finding is "contrary to the evidence." Maj. Op. 1345. I respectfully disagree because substantial evidence supports the PTAB's finding.
The majority errs by conducting a more exacting review than substantial evidence requires. In support of its conclusion, the majority cites Carney's specification's reference to "frequency hopping standards such as the [Groupe Spéciale Mobile ('GSM') ], personal communication network (PCN) standards, and the like." Carney col. 5 ll. 14-17; see Maj. Op. 1345. However, the PTAB thoroughly considered this passage from Carney, as well as Ericsson's expert's testimony regarding how a person having ordinary skill in the art ("PHOSITA") would have understood it, and found that it did not disclose frequency hopping. See J.A. 13-18. Specifically, the PTAB found that "this passage states, at most, that the system described in [Carney] supports the modulation specified by the GSM standard," J.A. 17, but that Carney "does not state, explicitly or implicitly, that the described system implements the optional frequency hopping functionality of GSM," J.A. 18. As the PTAB explained, see J.A. 17, when read in context, Carney refers to the GSM standard's modulation functionality, see Carney col. 5 ll. 6-17 (stating that "[t]he RF carrier signals are modulated with voice and/or data (channel) signals" and that "[t]he particular modulation in use[ ] may be any one of a number of different wireless ... standards ..., frequency hopping standards such as the [GSM] ..., and the like" (emphases added) ). Appellee Intellectual Ventures I LLC's ("IV") expert testified that the disputed passage "actually means ... that [a base station] can support GSM, and then it characterizes GSM as a frequency hopping standard. It doesn't say that it supports frequency hopping." J.A. 2559; see J.A. 3342 (stating, in IV's expert's declaration, that "the hopping feature is an optional portion of the GSM specification and does not need to be implemented in a base station or deployed by a network operator" and, thus, Carney "does not indicate that its base[ ]station is in compliance with the *1351 GSM frequency hopping standard"); see also J.A. 39 (first quoting J.A. 2559; then citing J.A. 3342).[3] Moreover, when the PTAB questioned Ericsson's expert about this disclosure, he acknowledged that the GSM standard's frequency hopping functionality is optional and that its modulation functionality does not vary, even if the optional frequency hopping functionality is not employed. See J.A. 672 (Q: "And you can use the same modulation regardless of whether you are using frequency hopping or not, is that right?" A: "Exactly.... It is all the same."); see also J.A. 37-38 (rejecting Ericsson's contention that the PTAB misapprehended Ericsson's expert's testimony). Taken together, this constitutes substantial evidence supporting the PTAB's finding that Carney does not disclose the "frequency hopping" limitation. See Yangzhou Bestpak Gifts & Crafts Co. v. United States , 716 F.3d 1370, 1378 (Fed. Cir. 2013) ("[Substantial evidence review] requires [the agency] to examine the record and articulate a satisfactory explanation for its action." (citation omitted) ).
The majority does not explain why this evidence is insufficient to support the PTAB's finding. See Maj. Op. 1343-46. Instead, it "reweigh[s] th[e] evidence," In re Warsaw Orthopedic, Inc. , 832 F.3d 1327, 1333 (Fed. Cir. 2016), and "identif[ies] alternative findings that could be supported by substantial evidence," Arkansas , 503 U.S. at 113, 112 S.Ct. 1046 ; see Maj. Op. 1344-45 (stating that "[e]ach term of claim 1 ... is recited in [Carney]," summarizing the evidence that purportedly supports its conclusion, and stating that the PTAB's opposite conclusion is "contrary to the evidence"). Because "[t]his court does not reweigh evidence on appeal, but rather determines whether substantial evidence supports the [PTAB]'s fact findings," In re NTP, Inc. , 654 F.3d 1279, 1292 (Fed. Cir. 2011), I would affirm the PTAB's finding that Carney does not anticipate the Challenged Claims as supported by substantial evidence.
II. Substantial Evidence Supports the PTAB's Determination that the Challenged Claims Would Not Have Been Obvious over a Combination of Carney and GSM 05.02
Obviousness is a question of law based on underlying findings of fact, which we review for substantial evidence. See In re Gartside , 203 F.3d 1305, 1316 (Fed. Cir. 2000). In assessing whether claims would have been obvious over a combination of prior art references, we consider, inter alia, whether a PHOSITA "would have been motivated to combine the teachings of the prior art references to achieve the claimed invention[ ] and ... would have had a reasonable expectation of success in doing so." Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd. , 821 F.3d 1359, 1367-68 (Fed. Cir. 2016) (internal quotation marks and citations omitted). We also consider whether the combination would *1352 have worked for its intended purpose. See In re NuVasive , 841 F.3d 966, 974 (Fed. Cir. 2016).
The PTAB determined that Ericsson failed to show that a PHOSITA "would have had a reasonable expectation of success in combining the teachings of [Carney] and GSM 05.02" or that "its proposed combination would have worked for its intended purpose, as it would not have performed frequency hopping." J.A. 32. The majority concludes that "[s]ubstantial evidence does not support the PTAB's ruling of nonobviousness in view of [Carney] in combination with ... GSM [05.02]." Maj. Op. 1348-49 (footnote omitted). I respectfully disagree and would hold that substantial evidence supports the PTAB's finding.
Once again, the majority conducts a more exacting review than substantial evidence requires. In reaching its conclusion, the majority fails to explain why the PTAB's factual findings are not supported by substantial evidence. See id. at 1346-49. Instead, similar to its anticipation findings, the majority "reweigh[s] th[e] evidence," In re Warsaw , 832 F.3d at 1333, and "identif[ies] alternative findings that could be supported by substantial evidence" to justify its conclusion of obviousness, Arkansas , 503 U.S. at 113, 112 S.Ct. 1046 ; see Maj. Op. 1347 (finding that Carney's DP RAM Enable 202 "determines which slot is associated with which DSP," which is directly contrary to the PTAB's conclusion (internal quotation marks, brackets, and citation omitted) ); see also J.A. 41 (finding that Carney's DP RAM Enable 202 "does not determine which slot is associated with which DSP" (emphasis added) ). However, the PTAB considered the very evidence cited by the majority, weighing the testimony of the parties' experts against the teachings of the prior art, see J.A. 19-33, and determined that reprogramming Carney's DP RAM Enable 202 would not be sufficient to implement frequency hopping on the base station, J.A. 26.
For example, Ericsson argued that Carney's DP RAM Enable 202 could be reprogrammed to map between RF channels and DSPs through TDM time slots. See J.A. 25. Relying on Carney's disclosures, the PTAB rejected this argument and determined that the association between RF channels and DSPs is maintained by Carney's DP RAM Data 204, see J.A. 26 (citing Carney col. 10 ll. 4-17), and that the DP RAM Enable 202 only stores indications of whether time slots are active or inactive rather than mapping RF signals to DSPs, see J.A. 27 (citing Carney col. 9 ll. 59-63, col. 10 ll. 9-17). Moreover, IV's expert explained that Carney "cannot generate the frequency hopping sequence according to ... GSM 05.02 ... through programming the DP RAM [E]nable 202 alone" because the DP RAM Enable 202 only "is capable of storing 1[ ]s and 0[ ]s representing enabled time slots and associated logical channels of the DSPs," J.A. 3353, as the PTAB explained, see J.A. 25-27. In contrast, the PTAB found Ericsson's expert's testimony to be "inconsistent with the description in [Carney]," J.A. 29, and "incomplete," J.A. 32, and, thus, "g[a]ve his testimony little weight," J.A. 29. The PTAB's thorough findings, which are supported by detailed citations to the '408 patent's specification, the prior art references, and the experts' testimonies, see J.A. 19-33, 39-42, are more than sufficient to withstand substantial evidence review, see Yangzhou Bestpak , 716 F.3d at 1378.
Even if the majority is correct that the PTAB's findings regarding reasonable expectation of success are not supported by substantial evidence, the majority commits legal error by finding obviousness without identifying a motivation to combine, a required element of obviousness. Reasonable expectation of success and motivation to *1353 combine are "two different legal concepts" that should not be "conflated." Intelligent Bio-Sys. , 821 F.3d at 1367. Finding the absence of either element is sufficient to establish non obviousness. See id. (explaining that, even though the PTAB erroneously "conflated" reasonable expectation of success and motivation to combine, "it nevertheless made sufficient factual findings to support its judgment that the claims at issue are not invalid " by finding absence of a motivation to combine (emphasis added) ). However, finding only that a PHOSITA had a reasonable expectation of success is not sufficient to establish motivation to combine and, thus, obviousness. See id. (explaining that "one must have a motivation to combine accompanied by a reasonable expectation" of success (emphasis added) ). Therefore, the PTAB's finding that a PHOSITA would not have had a reasonable expectation of success in combining Carney and GSM 05.02 was sufficient to establish nonobviousness. J.A. 32; see Intelligent Bio-Sys. , 821 F.3d at 1367. In contrast, to adequately support reversal, the majority's finding of a reasonable expectation of success must be "accompanied by" a finding of a motivation to combine. Intelligent Bio-Sys. , 821 F.3d at 1367. Nevertheless, the majority neither makes any findings regarding motivation to combine, see Maj. Op. 1346-49, nor could it, see Intelligent Bio-Sys. , 821 F.3d at 1366 ("The presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact." (internal quotation marks and citation omitted) ); see also Ariosa Diagnostics v. Verinata Health, Inc. , 805 F.3d 1359, 1365 (Fed. Cir. 2015) ("[W]e must not ourselves make factual and discretionary determinations that are for the agency to make." (citations omitted) ).
The PTAB's finding that a PHOSITA would not have had a reasonable expectation of success in combining Carney with GSM 05.02 is supported by substantial evidence, including Carney's disclosures and IV's expert's testimony. Therefore, I would affirm the PTAB's finding of nonobviousness.
III. Dependent Claims 2-16 Are Patentable for the Same Reasons as Independent Claim 1
The majority states that "[t]he PTAB did not discuss patentability of dependent claims 2-16" and "remand[s these claims] for th[at] purpose" without explanation. Maj. Op. 1348-49. However, claims 2-16 rise or fall with independent claim 1.
Before the PTAB, the parties did not present developed arguments regarding dependent claims 2-16, with the exception of claim 5. See J.A. 19, 33 (finding the dependent claims patentable for the same reasons as claim 1); see also Appellants' Br. 42 ("The [PTAB]'s anticipation ruling addressed only claim 1 because IV disputed only whether [Carney] taught its elements."), 65 ("Other than contesting Ericsson's proof regarding the limitations of independent claim 1, the only dependent claim that IV separately defended before the [PTAB] was claim 5."). In its final written decision, the PTAB thus designated claim 1 as illustrative, J.A. 7, and the parties did not challenge that designation on appeal, see generally Appellants' Br.; Appellee's Br. Indeed, the parties' arguments once again rest upon claim 1. See Appellants' Br. 42, 64-66 (stating that claims 2-16 are unpatentable for the same reasons as claim 1); Appellee's Br. 16-50 (failing to separately argue any of the Challenged Claims). But see Appellee's Br. 51-52 (arguing that, should we hold the PTAB erred in its finding of non-obviousness, claim 5 must be remanded because the PTAB failed to address separate arguments made with respect to its dependent *1354 limitation).[4] In light of its determination that claim 1 is unpatentable, claims 2-4 and 6-16, at minimum, are therefore unpatentable. See In re Affinity Labs of Tex.,LLC , 856 F.3d 883, 894 n.6 (Fed. Cir. 2017) (finding the independent claims "dispositive of all" claims because the appellant-patent-owner "did not argue to the [PTAB] that the dependent claims were separately patentable and ... does not argue the claims separately on appeal"); In re Kaslow , 707 F.2d 1366, 1376 (Fed. Cir. 1983) ("Since the claims are not separately argued, they all stand or fall together."). Nevertheless, because I would affirm the PTAB's determination that claim 1 is not unpatentable, I also would affirm the PTAB's conclusion that claims 2-16 are not unpatentable. See In re Kaslow , 707 F.2d at 1376.
CONCLUSION
The majority improperly steps out of the appellate role and substitutes its own interpretation of the evidence for the PTAB's. The proper inquiry, however, is not how we would have interpreted the evidence in the first instance; it is whether substantial evidence supports the PTAB's findings. Even if the majority's anticipation and obviousness determinations are supported by substantial evidence, so are the PTAB's, such that "two inconsistent conclusions" may be reasonably drawn from the evidence. Consolo , 383 U.S. at 620, 86 S.Ct. 1018 (citations omitted). Because we must affirm under such circumstances, I respectfully dissent.

The PTAB found that claims 1-10 and 12-16 of U.S. Patent No. 6,952,408 ("the '408 patent") were not anticipated by U.S. Patent No. 5,592,480 ("Carney") and that claims 1-16 of the '408 patent would not have been obvious over a combination of, inter alia, Carney and European Telecommunications Standards Institute, Global System for Mobile Communications, Recommendation 05.02: Multiplexing and Multiple Access on the Radio Path, December 1995, Version 3.8.0 ("GSM 05.02"). See Ericsson Inc. v. Intellectual Ventures I LLC , IPR2014-00963 (P.T.A.B. Oct. 22, 2015) (J.A. 1-34); see also Ericsson Inc. v. Intellectual Ventures I LLC , IPR2014-00963 (P.T.A.B. Dec. 22, 2015) (J.A. 35-46) (denying request for rehearing). I use "the Challenged Claims" to refer to claims 1-10 and 12-16 when discussing anticipation and to refer to claims 1-16 when discussing obviousness.

The majority finds claim 1 unpatentable for both anticipation and obviousness, such that much of its analysis is advisory. See FCC v. Pacifica Found. , 438 U.S. 726, 734-35, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978) ("However appropriate it may be for an administrative agency to write broadly in an adjudicatory proceeding, federal courts have never been empowered to issue advisory opinions."); cf. In re Gleave , 560 F.3d 1331, 1338 (Fed. Cir. 2009) (declining to address alternative grounds of unpatentability when the court upholds one such ground). Because the majority holds claim 1 unpatentable for obviousness, it need not address anticipation. On the other hand, because the majority holds claim 1 unpatentable as anticipated, it need only address obviousness with respect to claim 11, as the PTAB found claim 11 nonobvious but did not determine whether it was anticipated. See J.A. 3. Nevertheless, I would find the Challenged Claims neither anticipated nor obvious and, thus, must address both grounds of unpatentability. See In re Hodges , 882 F.3d 1107, 1111-17 (Fed. Cir. 2018) (determining that claims were not anticipated and then considering whether claims would have been obvious).

Although the majority states that IV's expert's testimony "contradict[ed]" Carney, Maj. Op. 1345-46, the majority fails to explain how IV's expert's testimony is inconsistent with Carney, particularly in light of Carney's disclosure of the GSM standard for its modulation rather than frequency hopping functionality, see id. at 1343-46. IV's expert's testimony was consistent with Carney's disclosures, and "[t]he PTAB [wa]s entitled to weigh the credibility of the witnesses." Elbit , 881 F.3d at 1358 (internal quotation marks and citation omitted); see Inwood Labs., Inc. v. Ives Labs., Inc. , 456 U.S. 844, 856, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) ("Determining the weight and credibility of the evidence is the special province of the trier of fact."); see also J.A. 18 ("[W]e do not credit [Ericsson's expert]'s testimony on this point."), 39 ("We continue to credit [IV's expert]'s testimony."). Therefore, I think it improper to second guess the PTAB's credibility determinations here.

The majority's failure to justify its remand of all of the dependent claims is even more concerning given that IV seeks remand of only claim 5.