NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**AMIT AGARWAL,**
*Appellant*

**v.**

**TOPGOLF INTERNATIONAL, INC.,**
*Appellee*

**UNITED STATES,**
*Intervenor*

---

2018-2270

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2017-00928.

---

Decided:  May 11, 2020

---

AMIT AGARWAL, Tampa, FL, pro se.

JOHN A. DRAGSETH, Fish & Richardson P.C., Minneapolis, MN, for appellee.  Also represented by OLIVER RICHARDS, KELLY NICOLE WILLIAMS, San Diego, CA.

DENNIS FAN, Appellate Staff, Civil Division, United

States Department of Justice, Washington, DC, for intervenor. Also represented by JOSEPH H. HUNT, SCOTT R. MCINTOSH; THOMAS W. KRAUSE, JOSEPH MATAL, FARHEENA YASMEEN RASHEED, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

―――――――――――――

Before DYK, CLEVENGER, and HUGHES, *Circuit Judges.*

CLEVENGER, *Circuit Judge*

Amit Agarwal ("Agarwal") appeals from a Final Written Decision of the Patent Trial and Appeal Board (the "Board") holding that U.S. Patent No. 5,370,389 ("the '389 patent") is unpatentable as obvious. *See TopGolf Int'l, Inc. v. Agarwal,* No. IPR2017-00928 (P.T.A.B. Jun. 13, 2018). For the reasons set forth below, we affirm.

BACKGROUND

I

Agarwal is the owner of the '398 patent, which is directed to a method of playing a point-scoring golfing game at a driving range. Golfers take aim at various target greens and receive points when the balls land on the greens. The greens are sloped downward towards a hole in the green so that a ball landing in the green will roll into the hole. The balls each have a barcode or color code to identify which tee the ball came from and the ball is scanned after entering the hole to identify which target the ball landed on. After the ball is scanned, the golfer's score is updated and displayed on computers at the tee.

Claim 1 of the '389 patent, the sole independent method claim, is representative and is reproduced below.

1. A method for playing a point-scoring game at a golfing range comprising the steps of:

(a) providing a plurality of golfing tees, each of which has an associated scoring device and a plurality of golf balls:

(b) providing each golf ball with an identifying characteristic which makes it possible to determine from which tee the golf ball originated;

(c) striking one of said golf balls at one of the plurality of golfing tees;

(d) providing a plurality of target greens which are remotely located from the plurality of golfing tees, each target green having a front portion and a rear portion, providing each target green with a receptacle hole and sloping the surface of each target green in a manner to cause said golf ball, once it lands upon the target green, to roll into said receptacle hole, said sloped surface forming an asymmetrical concave shape, said sloped surface having said receptacle hole located at its lowest point, said sloped surface having a profile, as viewed from the side of said target green, which is greatest in elevation at its rearmost end located at the rear portion of the target green furthest from said golfing tees, said profile continuously sloping downward, toward the front portion of the target green nearest to said golfing tees, until arriving at said receptacle hole, said downward slope travelling substantially more than one-half the distance between the front and rear portions of the target green, said profile, as it continues forward from said receptacle hole, continuously sloping upward toward the front portion of the target green, *said profile's forwardmost end located at the forward portion of the target green having an elevation that is significantly lower than that at its rearmost end*, said upward slope travelling substantially less than one-half the

distance between the front and rear portions of the target green;

(e) sensing said identifying characteristic of the golf ball, and identifying from which of said plurality of golfing tees the golf ball originated; and

(f) *indexing the score of the scoring device which is located at the golfing tee corresponding to the identifying characteristic of said golf ball.*

'389 patent col. 9, ll. 23–68 (emphasis added to indicate disputed claim limitations).

## II

TopGolf International, Inc. ("TopGolf") filed a petition for *inter partes* review asserting that claims 1 and 6 of the '389 patent are obvious in view of U.S. Patent No. 5,439,224 ("Bertoncino") and U.S. Patent No. 5,163,677 ("Foley"). Bertoncino is directed to a golf range with several independent sloped targets. Bertoncino also teaches a scoring system that uses codes on the balls and scanners at each target to award scores to players. Additionally, the targets in Bertoncino may have several levels with different scanning mechanisms for each level. Foley is directed to a golf driving range with several greens and various traps with detectors to determine where golf balls land.

The Board instituted review of both asserted claims. In the Final Written Decision, the Board determined that TopGolf demonstrated that the claims were unpatentable as obvious by a preponderance of the evidence. The Board declined to construe the claims, noting the only dispute need not be resolved because the "significantly lower" limitation was taught by Bertoncino, even under Agarwal's proposed construction. The Board agreed with TopGolf that the "significantly lower" limitation was taught by Bertoncino. Additionally, the Board found that a person of ordinary skill in the art would have known to combine Foley and Bertoncino to place scoring devices at each tee,

satisfying the "indexing" limitation.  The Board also considered Agarwal's takings challenge to the constitutionality of *inter partes* review and concluded the proceeding was constitutional because the '389 patent was always subject to *ex parte* reexamination.

Agarwal appeals from the Board's Final Written Decision, asserting that the Board improperly held the '389 patent unpatentable and challenging the constitutionality of *inter partes* review.  We have jurisdiction to decide the appeal under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Obviousness is a question of law with underlying findings of fact.  *Idemitsu Kosan Co. v. SFC Co.*, 870 F.3d 1379, 1379 (Fed. Cir. 2017).  As such, we review an obviousness determination *de novo*, though we review the factual findings of the Board for substantial evidence.  *Id.*  A factual finding is supported by substantial evidence "if a reasonable mind might accept the evidence as sufficient to support the finding."  *HP Inc. v. MPHJ Tech. Invs., LLC*, 817 F.3d 1339, 1343–44 (Fed. Cir. 2016).

Agarwal's appeal presents four issues: (1) whether the Board committed a legal error by relying on obviousness theories not raised by TopGolf in its Petition, (2) whether the Board's determination that the "significantly lower" limitation was met was supported by substantial evidence, (3) whether the Board provided adequate analysis of the "indexing" limitation, and (4) whether an IPR is an unconstitutional taking where a patent application was filed before 1999 and the creation of *inter partes* reexamination. We address these issues in turn.

## I

Agarwal first contends that the Board committed legal error by advancing theories of obviousness in its final written decision that were not argued by TopGolf in its Petition or Reply with regard to the "significantly lower" limitation.

The Board is limited to considering contentions raised in the Petition, and "the petitioner's contentions, not the Director's discretion, define the scope of the litigation all the way from institution through to conclusion." *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348, 1357 (2018). It is improper "for the Board to deviate from the grounds in the petition and raise its own obviousness theory." *Sirona Dental Sys. v. Institut Straumann AG*, 892 F.3d 1349, 1356 (Fed. Cir. 2018). Agarwal's argument, however, fails because the Board did not rest its decision on a theory of obviousness that was not raised in the petition.

The Board found that "Petitioner demonstrates by a preponderance of the evidence that Bertoncino teaches or suggests the 'significantly lower' limitation under Patent Owner's construction . . ." J.A. 46. In its Petition, TopGolf argued that "Bertoncino discloses that the forward most end of the target green is significantly lower in elevation than the rearmost end." J.A. 1176. TopGolf also argued that even if Bertoncino did not explicitly disclose a standalone target meeting the limitations of the claim, "such a green would be obvious to a skilled artisan based on Bertoncino's disclosures and the skilled artisan's general knowledge." J.A. 1177. Agarwal also contends that the Board *sua sponte* raised a theory that the target green could consist only of the innermost section 22. This theory, however, was also raised in TopGolf's Petition. There is no legal error in the Board's Final Written Decision, which addresses contentions raised in the petition.

II

Agarwal also challenges whether there was sufficient evidence to support TopGolf's obviousness theories. The Board considered Agarwal's arguments and the evidence from TopGolf and made factual findings supported by substantial evidence. The Board found that Bertoncino taught sloped target greens where the frontmost point was significantly lower than the rearmost point. It supported this

finding with language in Bertoncino and the figures in Bertoncino. The Board's finding is also supported by testimony from Agarwal's expert, Hurdzan, who explained that a prior art target green with the same elevation difference shown in Figure 4C of the '389 patent would meet the "significantly lower" claim limitation. Furthermore, the Board supported its finding with the declaration and testimony of TopGolf's expert, Robbins, who explained that section 22 disclosed in Bertoncino directly parallels the target green in the '389 patent. Robbins further testified that relying only on the slope in Figure 4 of Bertoncino was a mistake because the figure was more useful to see the ball retrieval mechanism than the slope of the targets, which was better observed in Figure 5.

Agarwal objects that other evidence contradicted the Board's finding. However, "[i]f two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1357 (Fed. Cir. 2018) (internal quotations and alterations omitted). The simple fact that some contradictory evidence exists in the record does not demonstrate that the Board's findings are unsupported by substantial evidence. *Id.* The Board's finding that Bertoncino taught the "significantly lower" limitation is supported by substantial evidence.

The Board found that the '389 patent was obvious both on the grounds that Bertoncino explicitly taught the "significantly lower" limitation and on the grounds that a person of skill in the art would be motivated to make the target greens of Bertoncino sloped based on their knowledge of the art. Either conclusion is sufficient to find that the '389 patent was obvious. Because we find that the Board's findings that Bertoncino explicitly taught the limitation are supported by substantial evidence, we need not consider whether the Board's findings about the skilled artisan's

motivation to slope the greens are also supported by substantial evidence.

## III

Agarwal contends that the Board made only cursory findings regarding the "indexing" claim limitation and did not fully explain its reasoning. The Board must do more than summarize and summarily reject arguments made by the parties. *In re Nuvasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016). The Board is required to explain its reasoning for accepting or rejecting arguments raised by the parties. *Id.* In this case, the Board considered several pieces of evidence that TopGolf pointed to in its Petition. The Board's Final Written Decision addressed the arguments made by TopGolf and Agarwal and acknowledged the evidence cited by TopGolf in its Petition and Reply.

Agarwal's challenge to TopGolf's assertions in its Petition of how the combination of Bertoncino and Foley taught the claimed limitation was to assert that TopGolf had failed to present evidence. The Board's opinion adequately points to evidence to the contrary, as it considers the evidence put forth by TopGolf. The Board's conclusion that TopGolf met its burden to show that the limitation was found in the prior art was adequately explained in the Final Written Decision.

## IV

Agarwal argues that a finding of unpatentability of a patent filed before November 29, 1999 in *inter partes* review is an unconstitutional taking. This court has already held that "the retroactive application of IPR proceedings to pre-[America Invents Act] patents is not an unconstitutional taking under the Fifth Amendment" because patent owners "had the expectation that the PTO could reconsider the validity of issued patents" in *inter partes* reexaminations and *ex parte* reexaminations. *Celgene Corp. v. Peter*, 931 F.3d 1342, 1362–63 (Fed. Cir. 2019). Although not

explicitly addressed in the opening brief, Agarwal appears to assert that patents filed before November 29, 1999 should be treated differently because *inter partes* reexamination was not established until that date. *Celgene*, however, made clear that a patent claiming priority from before November 29, 1999 could still be invalidated in an *ex parte* reexamination, and therefore, patent owners had an expectation that the PTO could reconsider the patent's validity. *Id*. at 1361–62.

## CONCLUSION

For the reasons stated above, we affirm the Board's conclusion that TopGolf demonstrated by a preponderance of the evidence that claims 1 and 6 of the '389 patent are unpatentable as obvious in view of Bertoncino and Foley.

## **AFFIRMED**

### COSTS

No costs.