NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: RANDY TAYLOR, BOBBY P. TAYLOR,**
*Appellants*

---

2018-1958

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 14/096,000.

---

Decided: May 22, 2019

---

CHARLENA THORPE, Incorporating Innovation LLC With Charlena Thorpe, Patent Attorney, Duluth, GA, for appellants.

THOMAS W. KRAUSE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by COKE MORGAN STEWART, MONICA BARNES LATEEF, JOSEPH MATAL.

---

Before DYK, REYNA, and WALLACH, *Circuit Judges.*

PER CURIAM.

Appellants Randy Taylor and Bobby P. Taylor (together, "Taylor") appeal the decision on appeal of the U.S. Patent and Trademark Office's Patent Trial and Appeal

Board ("PTAB"). The PTAB found, inter alia, that claims 1–3 and 5–13 ("the Proposed Claims") of Taylor's U.S. Patent Application No. 2014/096,000 ("the '000 application") (J.A. 40–49) were unpatentable as obvious. *Ex Parte Taylor*, No. 2018-001093 (P.T.A.B. Jan. 22, 2018) (J.A. 2–20); *see* J.A. 213–15 (Proposed Claims). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A) (2012). We affirm.

BACKGROUND

I. The '000 Application

The '000 application, entitled "Advertising Mat," generally relates to a method of advertising comprised of placing pre-printed advertisements on an advertising mat and placing the mat near a gas pump so that a customer "standing at the base of the gas pump may view the advertisements on the mat while pumping gas." J.A. 44; *see* J.A. 43–44. The '000 application discloses "a plurality of advertisements," J.A. 43, that "may include advertisements from any business including local, non-local, wholesale, retail, or any other business," J.A. 43–44, and "may include one or more advertisements having respective matrix barcodes (or two-dimensional codes)," J.A. 44. "[T]he advertising mat may be comprised of multiple layers," including "a bottom layer [that] may be a thin sheet of plastic, the middle layer [that] may be comprised of a vinyl sheet, and the top layer [that] may be a thin sheet of plastic which may have non-skid properties." J.A. 45.

The '000 application contains thirteen claims. *See* J.A. 213–15. Relevant to this appeal are independent claim 1, which is representative of dependent claims 5–9; dependent claims 2–3, each of which depend from claim 1; and independent claim 13. Claim 1 recites "[a] method of advertising comprising: printing a plurality of advertisements on an advertising mat wherein the advertisements are from different businesses that are off the premise of the gas pump; and placing the advertisement mat on the ground at the base of a gas pump." J.A. 213. Claim 2, in

turn, recites "[t]he method of claim 1, further comprising determining existing businesses located within a predetermined distance of the advertising mat, selecting retail businesses from the existing businesses, and printing on the advertising mat advertisements for a predetermined number of the selected retail businesses." J.A. 213. Claim 3 provides "[t]he method of claim 1, wherein at least one of the advertisements includes a matrix barcode." J.A. 213. Claim 13 recites "[a] station comprising: a gas pump; and an advertisement mat comprising pre-printed advertisements located on the ground at the base of the gas pump wherein the advertisements are from different businesses that are off the premise of the gas pump." J.A. 215.

## II. The Relevant Prior Art

### A. Potok

Entitled "Advertising System and Method Utilizing Floor Mat with Recessed Advertisement Panel, and Method of Doing Business Using the Same," U.S. Patent Application No. 2007/0059480 A1 ("Potok") (J.A. 337–49) teaches "[a] floor advertising system and method that utilizes a floor mat having a recessed area for receiving an advertising panel." J.A. 337. The intent of the claimed invention is "to provide an improved floor advertising system and method" that "affords the user the ability to change the advertisement/message without replacing the entire floor decal/mat." J.A. 344. Potok describes "a floor mat [as] having a bottom surface, a top surface, and a recessed area in the top surface," where "the recessed area ha[s] a depth," such that a panel having an advertisement printed on it may be "positioned in the recessed area." J.A. 337; *see* J.A. 338 (providing, in Figure 1, a depiction of the advertising floor mat). This "affords [a] user the ability to change the advertisement/message without replacing the entire floor decal/mat." J.A. 345; *see* J.A. 344. The top or bottom surface of the floor mat can be "textured or otherwise roughened to increase the friction coefficient," J.A. 345,

such that it is safe and durable to use "on a variety of surfaces," J.A. 344. Moreover, Potok discloses "a method of doing business" by "identifying an advertiser that desires to advertise in said store," charging the advertiser for the floor space, and placing "a panel having an advertisement for the advertiser" in the floor mat. J.A. 344.

## B. Graham

Entitled "Coupon Book and Methods of Design and Use Thereof," U.S. Patent Application No. 2007/0094075 A1 ("Graham") (J.A. 350–66) discloses the "design[] and generat[ion of] customized coupon books." J.A. 350. Graham is directed to the problem of coupon booklets "hav[ing] a low perceived value with consumers," due to distribution methods, such as by "junk mail," and to the lack of variety of vendors found in coupon booklets. J.A. 356. Graham teaches the categorization of coupons found in a "database of coupon offers" and allows a user to search coupons using pre-set search criteria, such as by location, so that a user can "quickly narrow the coupons to those he/she desires in the client's booklet," J.A. 357; *see* J.A. 363−64. Graham also discloses the inclusion of "numerical marking[s,] . . . [which] can be coded to provide information concerning the coupon such as but not limited to: (i) the booklet the coupon was offered in; and (ii) the geographic area in which the associated booklet was distributed." J.A. 357. Additionally, Graham "describe[s] a system for designing and generating customized coupon booklets," by means of "modules and software scripts permitting a user to choose each and every coupon to be included in the book." J.A. 357.

## C. Edstrom

Entitled "Electrical Static Discharge Method and Apparatus," U.S. Patent Application No. 2004/0257726 A1 ("Edstrom") (J.A. 326–36) "relates generally to electrical protection and safety," specifically by "protecting areas having volatile material from electrical static discharge

[('ESD')]." J.A. 330. Edstrom discloses "[a]n [ESD] system comprise[d of] a user-accessible subsystem (for example, a first gasoline pump), a local ground, a resistor-fuse element, and a main ground," in which "[t]he local ground dissipates a static electric charge from the user-accessible subsystem." J.A. 326. Relevant here, Edstrom teaches that "the user-accessible subsystem includes a mat for a person to stand upon," and the "mat is located in front of the first gasoline pump, such that a user attempting to use the first gasoline pump will stand on the mat when dispensing gasoline into a first motor vehicle." J.A. 331–32.

DISCUSSION

I. Standard of Review and Legal Standard

"We review the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015) (citation omitted). "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence," meaning that "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re NuVasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016) (internal quotation marks and citations omitted). "If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018) (internal quotation marks, brackets, and citation omitted).

A claim is invalid "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the filing date of the claimed invention to a person having ordinary skill in the art [('PHOSITA')] to which the

claimed invention pertains." 35 U.S.C. § 103 (2012).[1] Obviousness is a question of law based on underlying findings of fact. *See In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Those underlying findings of fact include (1) "the scope and content of the prior art," (2) "differences between the prior art and the claims at issue," (3) "the level of ordinary skill in the pertinent art," and (4) the presence of objective indicia of nonobviousness such "as commercial success, long felt but unsolved needs, failure of others," and unexpected results. *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17 (1966); *see United States v. Adams*, 383 U.S. 39, 50–52 (1966). In assessing the prior art, the PTAB also "consider[s] whether a PHOSITA would have been motivated to combine the prior art to achieve the claimed invention and whether there would have been a reasonable expectation of success in doing so." *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1333 (Fed. Cir. 2016) (internal quotation marks, brackets, and citation omitted).

## II. The PTAB's Obviousness Finding Is Supported by Substantial Evidence

### A. Claims 1, 3, and 5–9

The PTAB determined that claims 1, 3, and 5–9 were unpatentable as obvious over Potok. *See* J.A. 4. With respect to claim 1, which is representative of claims 5–9, the PTAB determined that Taylor failed to rebut the conclusion that "the act of placing advertising in any viewable location in which a consumer spends any length of time [was] old and well known long before the filing of [Taylor's]

---

[1]    Congress amended § 103 when it enacted the Leahy-Smith America Invents Act ("AIA"). Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 287. Because the '000 application contains a claim having an effective filing date on or after March 16, 2013, the AIA applies. *See id.* § 3(n)(1), 125 Stat. at 293.

invention," J.A. 13–14, and that *"which advertisements are selected for display* on that mat are inconsequential to the method of printing content on the mat, and placing the mat in front of a gas pump," J.A. 15 (emphasis added); *see* J.A. 13–15. With respect to claim 3, the PTAB determined that the inclusion of the "'matrix barcode' [wa]s not positively recited as actually being used to change or affect the manner of printing or placing or functioning of the advertising mat." J.A. 16. Taylor argues that, in light of Potok's "narrow[]" confines, Appellants' Br. 25, the PTAB erred in finding claim 1 obvious because the PTAB failed to provide evidentiary support for its "broad conclusion" regarding the long-running practice of placing advertisements in viewable, consumer-traveled locations, *id.* at 24. With respect to claim 3, Taylor contends that the barcode "is critical to the invention" as the "barcode would not achieve its advertising purposes without the mat and the mat would be unable to produce the desired result without the advertisement." *Id.* at 28. We disagree with Taylor.

Substantial evidence supports the PTAB's determination that claims 1, 3, and 5–9 would have been obvious over Potok. Potok teaches claim 1's advertising floor mat. *See* J.A. 213 (disclosing, in claim 1, the "printing [of] a plurality of advertisements on an advertising mat wherein the advertisements are from different businesses that are off the premise of the gas pump"), 337 (teaching, in Potok, "[a] floor advertising system and method that utilizes a floor mat having a recessed area for receiving an advertising panel"). While Potok discloses the mat's placement inside of stores, J.A. 344 ("[T]he advertising of products is within stores, including for example grocery stores, super markets, and retail stores."), it conceptualizes the placement of the advertising mat on the ground in consumer-traveled areas, J.A. 344 (identifying floor advertising space as "beneficial" because of its ability to "increase the advertising space that can be utilized in stores and public spaces"). A PHOSITA would have found it obvious to employ Potok's

teachings in the '000 application's placement of the floor mat on the ground around a gas pump, and, cognizably, at a gas station. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007) ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than *yield predictable results*." (emphasis added)); *see also* J.A. 225 (concluding, in an examiner's final rejection, that Potok teaches the placement of the advertising mat in "consumer-traveled areas" and places "in which a consumer spends any length of time, including a gas pump").

Similarly, substantial evidence supports the determination that claim 3's inclusion of a barcode on an advertisement placed on the mat would have been obvious in view of Potok. Claim 3's inclusion of a barcode is nothing more than another type of printed matter within an advertisement that does not change the function of the claimed advertising mat. *See In re Distefano*, 808 F.3d 845, 851 (Fed. Cir. 2015) (explaining that, under the printed matter doctrine, printed matter may only have patentable weight if "it is functionally or structurally related to the associated physical substrate"). Therefore, claims 1, 3, and 5–9 would have been obvious over Potok.

We are unpersuaded by Taylor's contention that Potok "teaches away or discourages from placing advertisements *outside* at a gas pump because this would be away from where the products are shelved." Appellants' Br. 32 (emphasis added). "A reference may be said to teach away when a [PHOSITA], upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *In re Urbanski*, 809 F.3d 1237, 1244 (Fed. Cir. 2016) (internal quotation marks and citation omitted). Taylor fails to establish that a PHOSITA, upon reading Potok, would be discouraged from determining that its placement of advertising mats on the ground in areas traversed by consumers would not reach

the ground surrounding gas pumps, as it is similarly a location frequented by consumers and is located next to goods available for purchase. *See KSR,* 550 U.S. at 401 ("When a work is available in one field, design incentives and other market forces can prompt variations of it, either in the same field or in another."). There is no meaningful difference between the inside and outside distinctions Taylor draws in light of Potok's broader disclosures, which explain the placement of advertising mats on "vacant floor space of a store" and in "public places." J.A. 344. *See PGS Geophysical AS v. Iancu,* 891 F.3d 1354, 1366 (Fed. Cir. 2018) (determining that appellant failed to demonstrate teaching away after concluding that it was "contemplated" by the combination of prior art). Accordingly, Taylor's teaching away argument fails.

## B. Claim 2

The PTAB found claim 2 obvious over a combination of Potok and Graham. *See* J.A. 18. Specifically, the PTAB determined that Graham teaches the claimed steps of "determining," "selecting," and "printing" advertisements for a predetermined number of the selected businesses. J.A. 16. Taylor argues that Graham merely categorizes businesses and provides a function for sorting them, failing to account for the selection of businesses "within a predetermined distance from a location" and so fails to disclose all of claim 2's limitations. Appellants' Br. 28–29. We disagree with Taylor.

Substantial evidence supports the PTAB's finding that dependent claim 2 would have been obvious over Potok and Graham. Although Potok does not disclose the additional limitations of dependent claim 2, the limitations of "determining" and "selecting" businesses, and "printing" advertisements for those businesses, *see* J.A. 213 (disclosing, in claim 2, "determining existing businesses located within a predetermined distance of the advertising mat, selecting retail businesses from the existing businesses, and

printing on the advertising mat advertisements for a pre-determined number of the selected retail businesses"), Graham does. Graham discloses a searchable database wherein a user may customize the selection of coupons based on criteria such as "their distance from [a desired] location," J.A. 363, and further teaches how the user may select those coupons for inclusion in a coupon booklet for later printing, J.A. 364. A PHOSITA would have found it obvious to employ Graham's teaching for claim 2's determination and selection of businesses based on geography. *See KSR,* 550 U.S. at 401. Taylor's argument that Graham fails to account for the selection and printing of businesses based *only* on its geographic location, Appellants' Br. 29, does not prevail. The '000 application does not preclude Graham's disclosures regarding the selection and printing of coupons based upon multiple other search criteria, *see* J.A. 364 (disclosing the "numerical encoding" of businesses for factors, such as location, where the codes may be used to identify and group the businesses based on geographic region). Graham discloses a method of searching businesses based on geographic location. *See* J.A. 364. Accordingly, claim 2 would have been obvious over the combination of Potok and Graham.

## C. Claim 13

The PTAB also found claim 13 obvious over the combination of Edstrom and Potok. J.A. 17–18. The PTAB reasoned that it would have been obvious under Edstrom "to take advantage of the time a user spends in front of a gas pump to advertise products and make advertising revenue." J.A. 18–19. Taylor argues that Edstrom and Potok fail to teach all limitations of claim 13, Appellants' Br. 32, and that a PHOSITA would not have been motivation to combine Potok and Edstrom, *id.* at 31. We disagree with Taylor.

Substantial evidence supports the PTAB's finding that claim 13 would have been obvious. Claim 13 and Edstrom

each teach the placement of a floor mat at the base of a gas pump. *See* J.A. 215 (teaching, in claim 13, "a station comprising: a gas pump; and an advertisement mat comprising pre-printed advertisements *located on the ground at the base of the gas pump* wherein the advertisements are from different businesses that are off the premise of the gas pump" (emphasis added)), 331–32 (disclosing, in Edstrom, a "mat [that] is *located in front* of the first gasoline pump, such that a *user attempting to use the first gasoline pump will stand of the mat* when dispensing gasoline into a first motor vehicle" (emphases added)). While Edstrom does not teach the placement of advertisements on the mat, Potok does, as described above. *See* J.A. 337 (disclosing, in Potok, "[a] floor advertising system and method that utilizes a floor mat having a recessed area for receiving an advertising panel"). Based on the combination of Edstrom, which discloses the placement of a floor mat in front of a gas pump, J.A. 331–32, and Potok, which discloses the placement of advertisements on a floor mat, J.A. 337, a PHOSITA would have been motivated to combine this prior art to meet the limitations of claim 13's advertising floor mat placed at the base of a gas pump, J.A. 344 (discussing the benefits of floor advertising). Accordingly, substantial evidence supports the PTAB's decision.

Taylor's primary counterargument is unavailing. Taylor argues the PTAB improperly relied on hindsight to reach its determination. Appellants' Br. 31. Specifically, Taylor contends that "Edstrom does not disclose placing advertisement[s] on mats at all" and no evidence exists to modify Edstrom for the inclusion of the advertisements. *Id.* at 32. Hindsight is not a permissible basis for determining obviousness. *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1073 (Fed. Cir. 2012) (explaining that "hindsight analysis is inappropriate because obviousness must be assessed at the time the invention was made"). The PTAB did not engage in impermissible hindsight here, as the

PTAB's analysis considers the entirety of the teachings of Edstrom and Potok. *See* J.A. 18–19 (describing Edstrom and Potok and citing references relied upon outside the prior art). Accordingly, Taylor fails to demonstrate error in the PTAB's finding.[2]

## CONCLUSION

We have considered Taylor's remaining arguments and find them unpersuasive.[3] Accordingly, the Decision on Appeal of the U.S. Patent and Trademark Office's Patent Trial and Appeal Board is

## **AFFIRMED**

---

[2] Taylor failed to separately challenge the Examiner's obviousness determinations for claims 10–12 before the PTAB and before us. *See* J.A. 19. *See generally* Appellants' Br. Accordingly, the argument is waived. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed Cir. 2006) (deeming waived an argument not developed in an opening brief).

[3] Although Taylor challenges the PTAB's alternative determinations of unpatentability of the Proposed Claims for lack of adequate written description and indefiniteness, *see* Appellants' Br. 13–22, we need not address these arguments on appeal, given that we uphold the PTAB's obviousness determinations, *see supra* Section II.A–C; *see also In re Gleave*, 560 F.3d 1331, 1338 (Fed. Cir. 2009) (declining to address alternative grounds of unpatentability when we uphold one such ground).